1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Halo Bontly, | Case No.: 2:23-cv-02025-APG-EJY |
| Plaintiff | **Order Granting in Part Defendants' Motion to Dismiss Plaintiff's Amended Complaint** |
| v. | |
| Audi of America, LLC; Volkswagen Group of America, Inc.; and Audi AG, | [ECF No. 19] |
| Defendants | |

Halo Bontly is suing Audi of America, LLC and Volkswagen Group of America, Inc. (collectively, Audi)[1] over a faulty 2017 Audi S6 Prestige (Vehicle) that he purchased in November 2020. I previously dismissed Bontly's original complaint for failure to state a claim. ECF No. 18. Bontly filed a first amended complaint (FAC). ECF No. 17. Audi moves to dismiss the FAC for failure to state a claim. ECF No. 19. I conducted a hearing on the motion on May 29, 2025

As explained below, I dismiss the fraud-based claims and the request for punitive damages but deny the motion in all other respects. Bontly's fraudulent inducement and fraudulent concealment claims are not alleged plausibly or with particularity under Federal Rules of Civil Procedure 8 and 9. His request for punitive damages does not plead facts that could satisfy NRS § 42.007(1). However, Bontly states a claim for breach of express warranty, but only as to the remedies available for breach of warranty, and only for manufacturing defects, not

---

[1] The first amended complaint also lists "Audi AG" as a defendant. ECF No. 17. Audi AG has not appeared in this matter or made any responsive filing. At the hearing on this motion, Bontly represented that Audi of America, LLC and Volkswagen Group of America, Inc. are the proper defendants in this case and that the case can proceed without Audi AG. *See* ECF No. 25.

1 | design defects.  In particular, Bontly cannot seek compulsory replacement or repurchase of the

2 | Vehicle under Nev. Rev. Stat. (NRS) § 597.630 because he has not satisfied the alternative

3 | dispute resolution requirement under NRS § 597.620.  Bontly also states a claim for unjust

4 | enrichment as to the money Bontly allegedly paid for a new motor, but not as to payments for

5 | services that Audi dealerships—not Audi itself—performed.  And Audi does not expressly move

6 | on the breach of implied warranty of merchantability, so that claim remains as well.

7 | **I.       Legal Standard**

8 |        In evaluating a Rule 12(b)(6) motion to dismiss, I take all well-pleaded allegations of

9 | material fact as true and construe the allegations in a light most favorable to the non-moving

10 | party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

11 |        FRCP 8(a) requires a "short and plain statement of the claim showing that the pleader is

12 | entitled to relief."  A complaint's factual allegations must establish a plausible, not merely

13 | conceivable, entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

14 | Conclusory allegations of law are insufficient to defeat a motion to dismiss. *Id.* at 570.

15 |        FRCP 9 imposes an elevated pleading standard for fraud claims.  Rule 9(b) requires that

16 | "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

17 | constituting fraud or mistake."  The facts pleaded must provide the defendants "notice of the

18 | particular misconduct" so that they can defend against the plaintiff's accusations "and not just

19 | deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th

20 | Cir. 2001) (simplified).  These facts must include the "who, what, when, where, and how of the

21 | misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

22 | (simplified).  So "[t]he plaintiff must set forth what is false or misleading about a statement, and

23 | why it is false." *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en

banc).

**II.    Fraudulent Inducement and Fraudulent Concealment**

Audi moves to dismiss Bontly's fraud-based claims.  During the motion hearing, the parties agreed that Nevada law applies to these claims.  The FAC advances both fraudulent inducement and fraudulent concealment theories of fraud.

### A.    *Fraudulent Inducement*

To establish fraud in the inducement, Bontly must prove by clear and convincing evidence each of the following elements:

(1) a false representation made by Audi,

(2) Audi's knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation),

(3) Audi's intention to induce Bontly to consent to the contract's formation,

(4) Bontly's justifiable reliance upon the misrepresentation, and

(5) damage to Bontly resulting from that reliance.

*J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

The FAC alleges that Audi Sahara made two false statements in March 2021: that Bontly "needed a new transmission" and that "the strainer change out would resolve any issues." FAC ¶¶ 16, 22, 29.  In his response to Audi's motion, Bontly asserts that the FAC is "quite clear" that these misrepresentations occurred at the time of the Vehicle purchase and that "he would not have purchased the vehicle absent the alleged fraud." ECF No. 22 at 21; *see also* FAC ¶ 35.  He confirmed this at the motion hearing.  But both statements occurred in March 2021, several months after Bontly purchased the Vehicle in November 2020 from a dealer in Massachusetts (not Audi Sahara).  Thus, these statements could not have induced Bontly to buy the car.  Bontly has not plausibly alleged fraudulent inducement under Rule 8.

These statements also fail under Rule 9 for independent reasons.  First, as currently pleaded, Audi Sahara's statement about the transmission replacement is not attributable to the Audi defendants.  These statements can be attributed to Audi only if Audi Sahara—a non-party—is an agent of the Audi defendants.  But the FAC does not plausibly allege any facts showing that Audi controls "the day to day or operative details" of Audi Sahara's business. *See Hunter Mining Laboratories v. Management Assistance*, 763 P.2d 350, 352 (Nev. 1988).  So as pleaded, neither Audi Sahara nor the other repair shops mentioned in the FAC are actual agents of Audi.  Bontly also argues that Audi Sahara was an "apparent agent" of Audi.  But "[a]bsent a showing of [Bontly's] reliance on some conduct of the alleged principal" leading Bontly to believe that Audi Sahara was Audi's agent, "there can be no apparent agency." *Hunter Mining*, 763 P.2d at 353.  The FAC alleges that Audi "communicat[ed] and made representations through" Audi Sahara., FAC at 7 n.2. But that allegation alone does not suffice to create apparent agency. *See Hunter* Mining, 763 P.2d at 352 (noting that an agency relationship does not exist "every time one party has a contractual right to control some aspect of another party's business").

Second, the FAC fails to allege with particularity that the strainer change statement was false.[2]  The FAC alleges that Audi Sahara told Bontly about the strainer recall, and that the strainer replacement did not fix the Vehicle's problem. FAC ¶ 22.  It also alleges generally that Audi Sahara said the strainer change "would resolve any issues." FAC ¶ 29.  But it does not identify which issues or allege any of the circumstances surrounding that statement.  The strainer change may fix a problem unrelated to Bontly's lawsuit.  So the FAC does not allege with

---

[2] Audi Sahara may have served as Audi's messenger in telling Bontly about the oil strainer recall.  So it is less clear how Audi's agency argument works with respect to that representation.

1 particularity that this statement was false.  Nor does the FAC allege that Bontly paid for the

2 strainer replacement under the recall, so it fails to allege that the representation caused damage to

3 Bontly as required under Nevada law. *See J.A. Jones*, 89 P.3d at 1018.   For these reasons,

4 neither statement is adequately pleaded under Rule 9 either.

5      At the motion hearing, Bontly suggested that Audi's advertisements about the high-

6 quality "German engineering" behind its "luxury" automobiles were false statements that

7 induced him to buy the Vehicle.  This allegation is not contained in the FAC.  But even if it

8 were, "representations as to the reliability and performance" of a product "constitute mere

9 commendatory sales talk about the product ('puffing')" and thus are "not actionable in fraud."

10 *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).  So Bontly cannot allege

11 fraudulent inducement by citing generic statements that Audis are luxurious or high-quality.

12 Bontly also suggested at the hearing that Audi automobiles are "walking billboards" to future

13 Audi buyers and that the Vehicle did not live up to the expectations produced by those

14 "billboards."  First, Bontly's impressions of Audi quality formed by viewing Audis do not

15 qualify as "representations" by Audi.  Second, even if Audi attached a billboard to all its

16 automobiles, any representation that a car is luxurious, reliable, or generically high-quality is

17 unactionable puffery under Nevada law.

### B.    Fraudulent Concealment

19      Bontly also alleges a fraudulent concealment theory.  Under Nevada law, fraudulent

20 concealment is fraud where the defendant "intentionally concealed or suppressed" a material fact

21 from the plaintiff "for the purpose of inducing the plaintiff to act differently than she would have

22 if she had known the fact." *Leigh-Pink v. Rio Props., LLC*, 512 P.3d 322, 325-26 (Nev. 2022) (en

23

banc).[3]  Here, the FAC alleges that Audi intentionally concealed or suppressed information about a "design defect" in the Vehicle that Audi should have disclosed before Bontly bought it. FAC ¶¶ 29, 32, 33, 36.

Bontly argues that the Rule 9 standard should be relaxed because the "documentation regarding warranty coverage" is in the sole possession of Audi. ECF No. 22 at 21; *see also* FAC ¶ 32.  As some courts have explained, the Rule 9(b) standard is "relaxed, but not eliminated," when fraudulent omission is at issue. *See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015).  But even under a relaxed Rule 9(b) standard, Bontly does not adequately allege that Audi had notice of the information that it allegedly concealed and suppressed.  Bontly claims the April 2021 *Rieger* lawsuit and the May 2022 oil strainer recall gave Audi notice of the defect. *See* FAC ¶¶ 21-24.  But these allegations fail under Rule 8 for three reasons.  First, these events occurred after Bontly bought the Vehicle in November 2020, so they could not have given Audi notice at the time of Bontly's purchase.  Second, Bontly alleges that the oil strainer replacement "did not fix anything related to the Vehicle's principal issues (e.g. bucking and loss of power)." FAC ¶ 22.  That allegation undermines Bontly's contention that the oil strainer recall is related to the Vehicle's alleged design defect.  Third, the FAC does not tie the alleged defects in *Rieger* to the Vehicle's defects.  The facts in the FAC thus do not plausibly give rise to liability for fraudulent concealment, so that claim is not adequately pleaded under Rule 8.  Therefore, it is not adequately pleaded under Rule 9(b), relaxed or not.

The Ninth Circuit case *Wilson v. Hewlett-Packard Co.* is instructive here. 668 F.3d 1136 (9th Cir. 2012).  There, the Ninth Circuit affirmed dismissal of a fraudulent concealment claim

---

[3] Fraudulent concealment requires that the defendant have a "duty to disclose" that fact to the plaintiff. *Id.*  The parties do not seem to dispute that Audi had such a duty.

that alleged consumer complaints regarding the product but provided "no indication whether the manufacturer was aware of the defect *at the time of sale*." *Id.* at 1147 (emphasis in original).  As the Ninth Circuit explained, merely alleging that a company had to have notice of a defect as the manufacturer of the product is "speculative" and "conclusory" without allegations of "tests or information" that could have alerted the company to the defect. *Id.*  Citing *Wilson*, the Ninth Circuit later concluded that complaints that "fail to allege the extent to which" a manufacturer "was aware" of a defect are not sufficient under Rule 9(b). *See Heber v. Toyota Motor Sales, U.S.A., Inc.*, 823 F. App'x 512, 515 (9th Cir. 2020).

This case is no different.  Bontly cites a recall and consumer complaint that occurred after he bought the Vehicle.  Although Bontly alleges Audi knew of the defect, he alleges no facts to support that; he merely alleges that Audi must have known of the defect due to its "exclusive knowledge as the manufacturer."  But that allegation "could be made about any alleged design defect in any manufactured product." *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008), *aff'd,* 322 F. App'x 489 (9th Cir. 2009) (cited with approval in *Wilson*, 668 F.3d at 1147).  Such allegations do not pass Rule 9 muster under *Wilson* and *Heber*.

Therefore, Bontly does not adequately plead either fraudulent inducement or fraudulent concealment under Rules 8 or 9.  So I dismiss Bontly's fraud-based claims.

**III.    Express Warranty**

Turning to the breach of express warranty claim, I consider the express warranty for 2017 Audi Models that appears on the docket at ECF No. 19-1 without converting Audi's motion into one for summary judgment because Bontly's claim necessarily relies on it and its authenticity is not disputed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The parties do not dispute that this express warranty covers the Vehicle.  The parties also do not dispute that Bontly may enforce this express warranty against Audi. *See* ECF No. 19-1 at 13 (stating that the

express warranty is "transferred, without cost, if ownership of the vehicle changes within the warranty period"). During the motion hearing, the parties agreed that the warranty should be interpreted under Nevada law.

It is unclear from the FAC whether Bontly is attempting to assert just a warranty claim or also a claim under Nevada's Lemon Law. At the motion hearing, Bontly's counsel failed to clear up this confusion. Regardless, the FAC does not plausibly allege a Lemon Law claim. Relevant here, the express warranty states: "Depending on individual State laws, you may or may not be required to use BBB AUTO LINE before pursuing rights and remedies under your State's lemon law." ECF No. 19-1 at 20. Nevada's Lemon Law requires a buyer to submit to a manufacturer's designated procedure for settling disputes informally before bringing an action under the Lemon Law. Nev. Rev. Stat. § 597.620. The FAC does not allege that Bontly satisfied this statutory alternative dispute resolution requirement.[4] Thus, as presently pleaded, Bontly has not properly alleged a claim under the Lemon Law and he may not seek remedies under that statute.[5]

---

[4] Bontly argues that the express warranty is a contract of adhesion, so he does not need to meet the ADR requirement. I am not persuaded for two reasons. First, Bontly cannot seek relief under an express warranty that he seeks to invalidate. Second, contracts of adhesion are generally enforceable under Nevada law. *See Burch v. Second Jud. Dist. Ct. of State ex rel. Cnty. of Washoe*, 49 P.3d 647, 649 (Nev. 2002). At the motion hearing, Bontly contended that I should "blue line" the contract to preserve the express warranty guarantees that benefit him, but remove the alternative dispute resolution provisions that are a condition for making claims under the warranty. But Bontly cited no authority for doing this. Indeed, it is not clear to what extent contract principles apply to the express warranty. *Compare* Nev. Rev. Stat. § 104.2313 (codifying the elements for creation of an express warranty), *with May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (stating the common-law elements for creation of a contract); *see also Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1288 (9th Cir. 2017) (noting that "California warranty law and contract law . . . are governed by different sets of rules").

[5] I do not opine whether Bontly's request for a replacement of the Vehicle or refund of the purchase price is a proper remedy under his claim for breach of the express warranty. *See Newmar v. McCrary*, 309 P.3d 1021, 1026 (Nev. 2013) (holding that where a warranty's remedy fails to serve its purpose, a buyer may be entitled to remedies under the UCC).

1    The express warranty covers "any repair or replacement to correct a defect in

2 manufacturer's material and workmanship (i.e., a mechanical defect)." ECF No. 19-1 at 10.

3 Audi argues that Bontly alleges a design defect that is not covered under the warranty against

4 defects in workmanship and materials.  The Supreme Court of Nevada has not addressed whether

5 a defect in workmanship and materials includes design defects, so I must predict what it would

6 say.[6]  I predict that the Supreme Court of Nevada would adopt the majority rule that a warranty

7 of "workmanship and materials" covers only manufacturing defects. *See Richey v. Axon Enters.,*

8 *Inc.*, 437 F. Supp. 3d 835, 845 (D. Nev. 2020) (Du, J.) ("The vast weight of authority holds that a

9 workmanship and materials warranty cannot encompass a design defect claim.") (simplified)

10 (collecting cases).  I may dismiss an express warranty claim if the "gravamen of the complaint"

11 is that the defect was a design defect that the warranty does not cover. *See Troup v. Toyota*

12 *Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013).  It is a close call, but the FAC plausibly

13 alleges a manufacturing defect.  Though it mentions a "design defect" in the fraud section (as in

14 paragraph 29), it also mentions a manufacturing defect in other places (paragraphs 23 and 34).

15 Bontly does not consistently assert that the defect in question is a design defect.  And the FAC's

16 section on breach of express warranty alleges facts that may underly a manufacturing defect,

17 such as the allegation that transmission replacement was a "non-conforming and/or non-

18 functioning part[]" covered by the warranty. FAC ¶ 43.

19    Therefore, I deny Audi's motion to dismiss the express warranty claim.  Bontly may

20 pursue his breach of express warranty claims, but only under a manufacturing defect theory.

21

22

---

[6] "When the highest court of a state has not directly spoken on a matter of state law, a federal
court sitting in diversity must generally use its own best judgment in predicting how the state's
23 highest court would decide the case." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d
581, 586 (9th Cir. 2018) (quotation omitted).

## IV.    Unjust Enrichment

Finally, Audi moves to dismiss Bontly's unjust enrichment claim.  "Unjust enrichment has three elements: the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021) (en banc) (simplified).

Audi's sole argument here is that the FAC does not allege that Audi received any monetary benefit from Bontly.  The FAC alleges that "Audi received an engine/transmission purchase, parts and labor and other payments for services that did not address the core issue of why the Vehicle was not operating properly." FAC ¶ 62.  This allegation plausibly pleads unjust enrichment.  Bontly allegedly paid Cascade German for a "factory original" Audi engine, so Cascade German plausibly used some of that money to buy an engine from Audi. *See* FAC ¶ 18.  Though this benefit would find its way to Audi only indirectly, an indirect benefit supports an unjust enrichment claim. *See Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (holding unjust enrichment claim was viable if plaintiffs "at least indirectly benefited" the defendants).

However, the FAC also alleges that Audi received payment for "services" and "labor." FAC ¶ 62.  This allegation fails to indicate why payment to various repair shops or Audi dealerships for services confers even an indirect benefit on Audi.  As noted above, Audi dealerships are not adequately alleged to be Audi's agents.  So I deny Audi's motion to dismiss the unjust enrichment claim, but only on the ground that Bontly's purchase of an engine from Cascade German plausibly alleges an indirect benefit to Audi.

## V.      Punitive Damages

Audi argues that I should dismiss Bontly's request for punitive damages.  Under NRS § 42.007(1), an employer is liable for punitive damages for an employee's actions only if the plaintiff proves one of three specific bases: (a) the employer had advance knowledge that the employee was unfit for the job, (b) the employer authorized or ratified the employee's wrongful act, or (c) the employer is "personally guilty of oppression, fraud or malice, express or implied." To receive punitive damages from a corporation, the plaintiff must prove that one of these bases are met by an "officer, director or managing agent of the corporation who was expressly authorized to direct or ratify the employee's conduct on behalf of the corporation." NRS § 42.007(1).

As discussed above, the FAC does not adequately allege fraud or malice on the part of Audi.  It does not allege that an Audi employee was unfit for their job.  It does not adequately allege that anyone at the repair shops or Audi dealerships were Audi agents, much less employees.  And it does not allege that any other Audi officer or agent satisfied one of these bases.  I mentioned these fatal defects during the hearing last August regarding Audi's motion to dismiss the original complaint, and they have not been corrected in the FAC.  So I again grant Audi's motion to dismiss Bontly's request for punitive damages.

## VI.      Conclusion

I THEREFORE ORDER that Audi's motion to dismiss **(ECF No. 19) is GRANTED in part**.  Bontly's fraudulent inducement and fraudulent concealment claims, as well as his request for punitive damages, are dismissed without prejudice.  The case may proceed on the remaining claims in the first amended complaint for breach of express warranty for a manufacturing defect, unjust enrichment based on the purchase of the engine from Cascade German, and breach of

implied warranty of merchantability.  If Bontly wishes to file a Second Amended Complaint

curing the defects discussed above, he must do so by June 20, 2025.

DATED this 2nd day of June, 2025.

_____

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

12